ALMON BROOKS

v.

G. P. GATES ET AL.

</div>

1. CONTRACT NOT SUSTAINED BY EVIDENCE.—An allegation that defendant by the terms of the sale in question agreed to practice as physician at Hot Springs, and send his prescriptions to plaintiff's drug store during the remainder of his natural life, is not supported by evidence that he agreed to send his prescriptions to plaintiff's while he remained at Hot Springs, and that he expected to remain there as long as he lived.

2. RESCISSION—RECOVERY UNDER COMMON COUNTS.—A party cannot rescind his contract and sue for a *quantum meruit* on the common counts for what he has paid on it, without returning or offering to return whatever he has received under it.

ERROR to the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed March 29, 1881.

This was an action of assumpsit brought by appellees against appellant, to recover damages for the breach of an alleged contract. The declaration contains two special counts and the common counts. A demurrer was sustained to the second special count which is not now called in question.

The first count alleges, in substance, that the defendant, Almon Brooks, on June 1st, 1875, was lawfully possessed of a drug store and stock of drugs at Hot Springs, Arkansas, and was also a practicing physician there; and in the course of his practice gave prescriptions to his patients, which were filled out of said stock of drugs, upon which he received profits amounting to $5,000 per annum. That on June 1st, 1875, the plaintiffs, Gates and Passmore, at the request of the defendant, entered into negotiations with him for the purchase of said stock of drugs, and of the prescriptions and influence of the defendant during his natural life; that the defendant agreed to sell to the plaintiffs, and the plaintiffs agreed to purchase the stock of drugs at their invoice price, and to pay therefor on the day said stock was inventoried, or as soon thereafter as demanded by the defendant; that defendant agreed that he would cause his prescriptions to be filled at plaintiff's store at Hot Springs, and would continue to practice as a physician there during his natural life; and the plaintiffs agreed to pay for the same in one and two years such sum of money as would be equal to the difference between the amount of the drugs, as ascertained by inventory, and the sum of $4,300. That under said agreement said stock was inventoried at $1,221.85, which sum was paid to defendant, and in addition thereto other payments were made, amounting to $2,062.41. The count avers that although the plaintiffs performed on their part, the defendant did not, nor would, when requested, nor at any time afterwards, cause prescriptions to be filled at plaintiff's store, but refused to do so, and immediately put it out of his power to perform said agreement on his part by ceasing to practice as a physician at Hot Springs, and removing to the city of Chicago, and permanently locating there in the business and profession of a practicing physician, whereby the plaintiffs suffered damage to the amount of $15,000.

The third count was upon a *quantum meruit* for goods sold; the fourth the common money counts; and the fifth upon an account stated.

To the first special count and the common counts there was a plea of the general issue, also pleas setting up the Statute of Frauds of Illinois and of Arkansas. The court sustained a demurrer to the pleas of the Statute of Frauds, to which ruling the defendant excepted.

There was a jury trial May 6, 1879, when the jury disagreed. Upon a second trial December 1st, 1879, the jury found for the plaintiffs, assessing their damages at $2,000, for which they had judgment. The defendant appealed to this court, and assigns various errors, and amongst them that the court erred in sustaining the demurrer to the pleas of the statute of frauds, and that the verdict of the jury is contrary to the evidence.

The facts of the case are sufficiently stated in the opinion of the court.

Mr. CHARLES A. GREGORY and Mr. EMORY A. STORRS, for appellant ; that the contract was within the Statutes of Frauds, cited Broadwell v. Getman, 2 Denio 87 ; Berry v. Doremus, 30 N. J. 399 ; Tolley v. Greene, 2 Sandf. Ch. 91 ; Brown on Statute of Frauds, § 276 ; Lapham v. Whipple, 8 Met. 59 ; Lyon v. King, 11 Met. 412 ; Emery v. Smith, 46 N. H. 151 ; Clury v. Herring, 4 Exch. 621 ; Pierce v. Paine, 28 Vt. 34 ; Lockwood. v. Barnes, 3 Hill. 128 ; Marcy v. Marcy, 9 Allen, 8 ; Blackney v. Goode, 30 Ohio St. 350 ; Walker v. Johnson, 96 U. S. 424 ; McPherson v. Cox, 96 U. S. 404 ; Packet Co. v. Sickles, 5 Wall. 58.

Messrs. SWETT, BATES & HASKELL, for appellees; that in assignment of errors the grounds of error should be specified, cited Donelly v. State, 26 N. J. L. 463; Ins. Co. v. Updegraff, 43 Pa. St. 350; McKelvey v. Wilson, 9 Pa. St. 183.

The contract is not within the Statute of Frauds: Fenton v. Emblers, 3 Burr. 1,278; Roberts v. Rockbottom Co. 7 Met. 46; McLeis v. Hale, 10 Wend. 426; Plimpton v. Curtis, 15 Wend.

236; Kent v. Kent, 18 Pick. 469; Peters v. Inhabitants of Westborough, 19 Pick. 364; Ellicott v. Turner, 4 Md. 476; Hutchinson v. Hutchinson, 46 Me. 154; Howard v. Bergin, 4 Dana, 137; Lyon v. King, 11 Met. 411; Foster v. McO'Blevis, 18 Mo. 88; Browne on Statute of Frauds, 277; Blanchard v. Weeks, 34 Vt. 589; Russell v. Slade, 12 Conn. 460; Johnson v. Watson, 1 Kelly 350; Berydell v. Drummond, 11 East, 152; Bracegirdle v. Heald, 1 B. & Ald. 727; Holbrook v. Armstrong, 1 Fairf. 31; Sheey v. Adarene, 41 Vt. 541.

WILSON, J.  By the terms of the agreement between the parties, as alleged in the plaintiff's declaration, appellant Brooks, in consideration of $4,300, to be paid to him by appellees, Gates and Passmore, agreed to sell and deliver to them a stock of drugs, afterwards inventoried at $1,296, and also to continue during his natural life to practice as a physician at Hot Springs, Arkansas, and furnish prescriptions for his patients to be filled at appellees' drug store; that the amount at which the drugs should inventory was to be paid for presently, or as soon as demanded, and the balance, about $3,000, was to be paid in one and two years from the date of the contract.

To appellant's plea of the Statute of Frauds, alleging that this was a contract not to be performed within one year, and was not in writing, the court sustained a demurrer.  The decision of the circuit court, in sustaining the demurrer, is assigned as one of the errors, but it becomes unnecessary to pass upon it, as, in the view we take of the case, a fundamental obstacle to appellees' right of recovery is found in the lack of satisfactory proof of the alleged agreement as the same is set forth in the plaintiff's declaration.

The contract, as stated by the plaintiffs was extraordinary, not to say highly improbable.  Appellant was a physician of high standing, with a wide reputation for skill, and in the receipt of a very large income from his practice.  It is fair to presume from his eminent position in the profession and his well-known skill, that he would find little difficulty in speedily acquiring a lucrative practice elsewhere, should he at any time desire to change his location from a remote resort for

invalids, to the more inviting field and cultivated society of a large city. That he should under such circumstances, for the trifling consideration of three or four thousand dollars, forever foreclose his right of removal, and bind himself to spend the remainder of his life in the practice of his profession in an obscure village, is a proposition so at-variance with reason and our common observation, as to excite at the outset one's incredulity. But more than this, by such a contract he was to cut himself off from the right of ever laying down the burden of professional labors and responsibility, and the privilege of retiring from the practice to the quiet walks of life, even though he should have accumulated a fortune, and the necessity for work no longer existed.

But the mere improbability that a party thus situated would make such a contract would not justify the court in disregarding it, if there were satisfactory proof that it had been entered into; nor are we prepared to say that the contract in question, if made, is of such a character as that the parties to it might not lawfully enter into. Its nature and extraordinary provisions are however proper subjects to be taken into consideration in determining whether a contract of the character set forth was ever in fact made.

The burden of proving the contract as alleged rested upon the plaintiff. The only witness as to its terms was Passmore, one of the plaintiffs. His testimony in relation to it was as follows : " On or about the 17th day of April, 1875, Dr. Brooks came into the store, and said he had come to make a trade with me. He wanted to sell me the George Lower drug store. I told him I did not want any drug store. He said ' But stop, that is my drug store.' Says I, ' What?' He said, laughing, ' That is my drug store, and I will make you this proposition : I will sell you that drug store, with my prescriptions and influence so long as I live in Hot Springs, for $4,300.' I says, ' Doctor, how long do you expect to live in Hot Springs?' He says, ' The balance of my life.' "

On cross-examination he testified, " Doctor Brooks said he expected to stay the remainder of his natural life. I understood he agreed to stay there the balance of his life. He said

Brooks v. Gates.

'I will stay here the balance of my life.' I thought he would stay there the balance of his natural life, and keep writing prescriptions for me. Those were the terms we agreed on. Arrangements were made to give him vacations."

This is in substance his entire testimony as to the making of the contract, and is all the testimony offered by the plaintiffs in relation to its terms. No other witness was called by them on that branch of the case, nor was there any memorandum or agreement in writing in relation to it.

Construing this evidence most strongly in favor of appellees, we think it obvious that it fails to prove anything more than an expectation on the part of Passmore that appellant was to remain permanently at Hot Springs, and not an absolute agreement that he would so remain. If Passmore had seriously intended to bind appellant to a condition so extraordinary as that of a life-service, it seems to us incredible that he should not have required it to be evidenced either by an instrument in writing, or if it was to rest in a verbal agreement, that the agreement should have been couched in the most unmistakable language. It is to be presumed that he states the terms of the agreement most favorably to the theory of appellees, and yet in his direct examination he does not swear that appellant agreed to remain at Hot Springs, but that he promised to send him prescriptions and give him his influence so long as he remained there; and when asked how long he expected to remain, he replied, "the balance of my life." This was but the expression of an opinion, and did not constitute a contract. If, therefore, the contract as claimed by appellees, was to rest upon the plaintiffs' uncontradicted testimony, we should be inclined to hold that it was not sufficiently proven.

But opposed to the testimony of Passmore is, first, the testimony of appellant, who swears that there was no agreement that he was to remain in Hot Springs for any length of time ; that the length of time he was to remain there did not enter into the contract in any way, and that nothing was said on that subject. He says, " I do not think that was once men-

tioned, because it was generally known that I was going away soon, and he knew it."

W. W. Clark, a disinterested witness, testified that he was a druggist at Hot Springs, and knew of the transfer of the drugs known as the Lower stock, by Dr. Brooks to Gates and Passmore. That he made an arrangement with Passmore at the latter's solicitation for a half interest in the drug store ; that during the negotiations for the purchase Passmore never told him that Brooks had agreed to remain at Hot Springs ; that Passmore said that on all moneys taken in on Brooks' prescriptions Brooks was to be paid dollar for dollar until the amount paid should be equal to the amount of the invoice of the stock ; and that whenever Brooks should cease to send him prescriptions all payments for the stock and bonus ceased, and he would be a clear gainer of the goods unpaid for.

This testimony is strongly corroborative of appellant's; for if there had been a provision in the contract that Brooks was to remain in Hot Springs and send prescriptions during his life, it is inconceivable that Passmore should not have held that out as an inducement to Clark to buy in.

We think, therefore, that aside from the inherent improbability that appellant would enter into an agreement of the character claimed by appellees, the proof preponderated strongly to show that he did not, and that the evidence was insufficient to warrant the jury in finding the contract, as alleged, was made.

But it is claimed that if the plaintiffs were not entitled to recover under the special count for a breach of the contract, the verdict may be sustained under the common counts for money had and received by the defendant, which equitably belongs to the plaintiffs. If the case were such as to render the common counts available, we are by no means clear from an examination of the evidence that appellees were not reimbursed for the moneys paid by them to appellant, by the stock of drugs and profits on prescriptions sent to them by appellant and his partners subsequent to the sale and delivery of the drugs. The testimony shows that the profits on appellant's prescriptions were very large, amounting to from $5,000 to

$10,000 a year.  It is averred in the declaration that the value of the business of Dr. Brooks was $5,000 per year to any drug store to whom he should send his prescriptions.  He continued to practice at Hot Springs for at least nine months after the sale of his drug store to appellees, doing as large a business as he had ever done, and sending his prescriptions to appellees; and he also formed a partnership with Dr. Garnett, who continued thereafter to send prescriptions to be filled by appellees.  We are, therefore, not prepared to say that upon a *quantum meruit* any balance would be found due to appellees.

But if it were otherwise, the plaintiffs were not in a position to enable them to resort to the common counts, but must recover, if at all, on the special count.  The contract, whatever may have been its terms, was in part performed.  Appellees received a stock of drugs, and a large amount of prescriptions to be filled.  Out of these they derived profits.  They also got the old prescription file of the store, which was valuable, and the incidental advantages of the good-will of appellant's patients.  All these things entered into the consideration which induced the making of the contract with appellant.  It is a familiar principle that a party cannot rescind his contract, and sue for a *quantum meruit* on the common counts for what he has paid on it, without returning or offering to return to the other party whatever he has received under it.  He must place the other party in the same position he occupied at the time the contract was entered into.  Besley v. Dumas, 6 Brad. 291; Hunt v. Silk, 5 East. 241; 1 Chit. Plead. 387.  In Phœnix M. L. Ins. Co. v. Baker, 85 Ill. 410, the court say: "The count for money had and received is not maintainable if a contract has been in part performed, and the plaintiff has derived some benefit, and by recovering a verdict the parties cannot be placed in the exact situation in which they originally were when the contract was entered into."  And in Russell v. Gilmore, 54 Ill. 148: "It was never allowed to a plaintiff to recover in such action (for money had and received) in a case where there was a special contract, the breach of which was the *gravamen* of the action."

Appellees have never returned nor offered to return what

they received on the contract, and their only remedy, if they have any, is the recovery of damages in an action for a breach of the contract.

For the reasons hereinabove given, the judgment of the court below is reversed and the cause remanded.

<div align="right">Reversed and remanded.</div>